**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 15, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Roger Weese,**
**Claimant Below, Petitioner,**

**v.)    No. 23-340**          (JCN: 2021013416)
                                       (ICA No.: 22-ICA-247)

**Harry Green Chevrolet, Inc.,**
**Employer Below, Respondent.**

**MEMORANDUM DECISION**

Petitioner Roger Weese ("Petitioner") appeals the April 10, 2023, memorandum decision of the Intermediate Court of Appeals ("ICA").[1]  The ICA affirmed the October 27, 2022, decision of the West Virginia Workers' Compensation Board of Review ("BOR"), which affirmed two orders from the claim administrator that (1) closed the claim for temporary total disability ("TTD") benefits, and (2) denied authorization for a repeat MRI of the lumbar spine.  On appeal to this Court, Petitioner asserts that his compensable "low back" injury had not reached maximum medical improvement ("MMI") when the claim administrator entered these two orders.  Respondent Harry Green Chevrolet, Inc. ("Respondent") filed a timely response urging this Court to affirm the ICA's decision. After review, we find that the preponderance of the medical evidence demonstrates that Petitioner's compensable "low back" injury had not reached MMI when the claim administrator entered the two orders closing his claim for TTD benefits and denying the requested lumbar spine MRI.  Therefore, we reverse the ICA's decision and remand this matter to the BOR with directions for entry of an order consistent with our ruling herein.[2]

Petitioner, an automobile technician, was injured on January 4, 2021, when his right hand became trapped between a moving car tire and a strut, injuring his hand and back.[3]

---

[1] *See Weese v. Harry Green Chevrolet, Inc.*, No. 22-ICA-247, 2023 WL 2863245 (W. Va. Ct. App. Apr. 10, 2023) (memorandum decision).

[2] We find that a memorandum decision reversing the ICA is appropriate. *See* W. Va. R. App. P. 21.  Petitioner is represented by J. Thomas Greene, Jr., and T. Colin Greene. Respondent is represented by Jeffrey M. Carder.

[3] The injury to Petitioner's hand is not at issue in this appeal.  Thus, we confine our discussion to his back injury.

1

Petitioner reported the injury to Respondent and stated that he felt "burning [pain] going down my right leg from my back." Petitioner attempted to continue working despite experiencing these symptoms. However, by January 12, 2021, Petitioner could not continue working and sought medical treatment. He first went to a chiropractor and was told to get an MRI at the hospital. Petitioner went to United Health Center in Bridgeport, West Virginia, on January 20, 2021, and described back pain radiating into his right leg following his workplace injury. An x-ray of Petitioner's lumbar spine was taken and, according to a treatment note completed by Dr. Joe Migaiolo, it showed "no spondylolysis nor significant degenerative change." Petitioner was diagnosed with low back pain and right-side sciatica. He received a prescription for steroids and was referred to Dr. Russell Biundo for further evaluation and treatment.

Petitioner was examined by Dr. Biundo on January 26, 2021. Dr. Biundo ordered a lumbar spine MRI after finding that Petitioner exhibited "evidence of lumbar radiculopathy, lumbar strain, and possible lumbar herniated disc." Dr. Biundo diagnosed Petitioner with lumbar radiculopathy and lumbar herniated disc. On February 1, 2021, the claim was held compensable for "low back," and Petitioner was granted TTD benefits from January 12, 2021, through February 1, 2021.[4]

Petitioner had a lumbar spine MRI on February 5, 2021. Dr. Jason Stewart interpreted the MRI as showing multilevel degenerative changes, including "a circumferential disc bulge with right paracentral disc extrusion and annular tear" at L4-L5. Rachel Ann Gregis, an advanced practice registered nurse ("Nurse Gregis"), wrote a letter that day providing that Petitioner would need to remain off of work due to his low back injury.

On April 13, 2021, Petitioner underwent an independent medical examination ("IME") performed by Dr. Christopher Martin. Dr. Martin noted that Petitioner (1) had burning pain in his lower back that radiated into his right leg, and pain with walking and standing for more than ten minutes; (2) expressed anxiety about being off of work and a strong motivation to return to work;[5] and (3) had not reached MMI for his back injury. Dr. Martin concluded that Petitioner "sustained a strain-type injury to the lumbar spine on the date of [the workplace] injury and that his problem is predominantly muscular in nature rather than from any abnormality of the spinal column." Further, Dr. Martin found that "[t]he imaging findings reported on the MRI are very common, nonspecific, age-related

---

[4] The WC-1 form was completed on January 29, 2021, after Petitioner was seen by Dr. Ashley Yelink for his hand injury.

[5] Dr. Martin found Petitioner to be "a very credible historian with no history of any prior workers' compensation claims or indeed any medical care at all prior to this episode." Similarly, Dr. Martin reported that, "[t]his is not a man to exaggerate or overrepresent symptoms."

findings and I do not believe these are related to either his injury of January 4, 2021[,] or his low back symptoms. These findings are all reported to be mild." Dr. Martin noted that a trial nerve block injection would constitute reasonable treatment for Petitioner's compensable back injury because the disc extrusion and annular tear at L4-L5 "may be related to the injury." Alternatively, he recommended four to eight weeks of physical therapy. Finally, Dr. Martin concluded that "I anticipate that he will reach [MMI] in approximately 4 months and should be seen again for a final impairment rating" at that time.

Over the next three months, Petitioner (1) pursued physical therapy but reported that it exacerbated his low back symptoms; (2) had "flairs of back pain approximately every two weeks that last 2-3 days, and 'stiffness' in the low back;" (3) went to the Stonewall Jackson Memorial Hospital emergency department on July 26, 2021, for "acute worsening of his low back pain that radiated to his [bilateral lower extremities]" and was treated with intramuscular injections and oral steroids; and (4) reported constant numbness and some weakness from his right knee to his right foot.[6]

In the fall of 2021, Petitioner began a course of physical therapy. On October 29, 2021, Jeffrey B. Sandy, a physical therapist, performed a functional capacity evaluation. Mr. Sandy determined that Petitioner had demonstrated

> significant improvement in functional lifting capacity, endurance, core stability, strength, functional [range of motion], and decreased overall pain. However, **he continues to be limited with lifting overhead and pivoting/twisting/lifting combination activities that limit his ability to safely return to work at this time**.
>      . . . .
> It is recommended that [Petitioner] attend rehabilitative therapy for 5 visit(s)/week with an expected duration of 4 week(s).

(Emphasis added).

On November 1, 2021, three days after the functional capacity evaluation concluded that Petitioner was unable to safely return to work, Petitioner underwent an IME conducted by Dr. Joseph Grady at Respondent's request. Dr. Grady's report provides that the functional capacity evaluation was performed on October 29, 2021, "but I do not have

---

[6] This medical history was contained in an August 4, 2021, treatment note from Nurse Gregis. Petitioner had another appointment with Nurse Gregis on September 8, 2021, and reported some improvement. Nurse Gregis noted that Petitioner wanted to return to work but was concerned about reinjuring his back.

records on that." According to Dr. Grady's report, Petitioner stated that "he has not had any previous injuries involving . . . his lower back and he states he has not had any other Workers' Compensation Claims." Dr. Grady also noted that "[i]maging studies were done, which revealed some diffuse multilevel degenerative changes of the lumbar spine, most prominent at the L4-L5 level." His assessment of Petitioner's back injury was "lumbar sprain superimposed upon pre-existing multilevel lumbar spondylosis." Further, in arriving at an impairment rating for Petitioner's back injury, Dr. Grady opined that, "[i]n light of the pre-existing degenerative changes of the lower back, I would apportion out a part of the impairment rating." Dr. Grady concluded that Petitioner was MMI "for the allowed conditions on this claim, which according to the IME Referral Letter include a right-hand fracture and *a lumbar sprain*." (Emphasis added). Finally, Dr. Grady did not recommend any work restrictions for "*the accepted conditions on this claim of the healed . . . lumbar sprain. In my opinion, he can work on full duty*." (Emphasis added). As highlighted by the foregoing, Dr. Grady's report identified Petitioner's compensable injury as "lumbar sprain." We note that Petitioner's compensable injury was "low back."

On November 10, 2021, Petitioner was seen by Gary P. Barcinas, a physician's assistant with Dr. Biundo's office. Mr. Barcinas assessed Petitioner with both a lumbar sprain and a lumbar herniated disc after finding that he had lumbosacral pain radiating down into both lower extremities. Based on this finding, Mr. Barcinas requested authorization for a repeat MRI of the lumbar spine and a follow-up appointment with Dr. Biundo.

On November 30, 2021, the claim administrator issued a notice of TTD suspension. On December 3, 2021, Dr. Biundo submitted another request for authorization to conduct a repeat MRI, stating that this MRI needed to be performed before Petitioner "can go back to work." In January of 2022, the claim administrator issued two orders (1) closing the claim for TTD benefits, and (2) denying the request for the repeat MRI. These orders relied on Dr. Grady's conclusion that Petitioner had reached MMI and could return to full duty work. Petitioner protested both of these orders.

On October 27, 2022, the BOR affirmed the claim administrator's orders closing the claim for TTD benefits and denying authorization for a repeat MRI. The BOR relied on Dr. Grady's conclusion that Petitioner had reached MMI on November 1, 2021, and needed no further treatment for his compensable injuries.[7] Further, the BOR noted that herniated disc is not a compensable condition in the claim and that there was no evidence that Dr. Biundo requested that it be added as a compensable condition. Therefore, the BOR

---

[7] The BOR's order provides that "Dr. Grady found that the claimant had reached MMI in regard to his compensable . . . *low back injuries* and was in need of no further medical treatment in the claim." (Emphasis added). We again note that Dr. Grady did not state that Petitioner was MMI for his "low back" injury. Instead, Dr. Grady found that Petitioner had reached MMI for his "lumbar sprain."

concluded that the weight of the evidence established that (1) Petitioner's compensable conditions were at MMI, which appropriately triggered the closure of the TTD benefits; and (2) the requested MRI was for a lumber herniated disc, which is not a compensable condition in this claim.

The ICA affirmed the BOR's ruling. It found that

> [t]he evidence of record indicates that lumbar herniated disc is not a compensable condition in the claim and that no medical provider has submitted a Diagnosis Update requesting that it be added. Because lumbar herniated disc is not a compensable condition, it is not a proper basis to prevent the closure of TTD benefits or for requesting additional medical treatment in this claim.

*Weese*, 2023 WL 2863245, at *4.

Following entry of the ICA's decision, Petitioner filed the instant appeal. Our standard of review is as follows:

> On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, we address two main issues. First, we consider whether the preponderance of the medical evidence established that Petitioner's compensable injury, "low back," had reached MMI. Second, we examine the ICA's conclusion that Dr. Biundo's MRI request was properly denied because lumbar herniated disc is not a compensable condition in this claim.[8] As explained below, we find that (1) the

---

[8] This Court has recognized that "[t]he right to workmen's compensation benefits is wholly statutory." Syl. Pt. 2, in part, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965). Further, "[i]n order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. Pt. 1,

preponderance of the medical evidence established that Petitioner's low back injury had not reached MMI when the claim administrator entered the two orders closing Petitioner's claim for TTD benefits and denying the requested lumbar spine MRI; and (2) Dr. Biundo's request for a repeat MRI should have been granted.

We first address whether the preponderance of the medical evidence established that Petitioner's "low back" injury had reached MMI. The BOR and ICA entered consistent rulings affirming the claim administrator's order closing the claim for TTD benefits on the basis that Petitioner's low back injury had reached MMI.[9] Dr. Grady provided the only

---

*Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The claim administrator must provide medically related and reasonably required medical treatment for a compensable injury. *See* W. Va. Code § 23-4-3 (2005).

[9] West Virginia Code § 23-4-1g(a) addresses the factfinders' role in a workers' compensation decision. It provides that the

> resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution. The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

*Id.*

In *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. Nov. 13, 2024) (memorandum decision) we observed that

> [t]he factfinder in a workers' compensation case is thus vested with the statutory responsibility to weigh the conflicting medical opinions in terms of "relevance, credibility, materiality and reliability . . . in the context of the issue presented." West Virginia Code § 23-4-1g(a) provides a

6

medical opinion in the record concluding that Petitioner's "compensable conditions" had reached MMI. However, we find that the preponderance of the medical evidence does not support this conclusion. First, we note that Dr. Grady's opinion rests on a mistaken premise: that Petitioner's compensable condition was "lumbar sprain." Dr. Grady identifies "lumbar sprain" as Petitioner's compensable condition multiple times in his report and notes that the "IME Referral Letter" identified "lumbar sprain" as Petitioner's compensable condition. This is incorrect. Petitioner's compensable condition was "low back." Additionally, Dr. Grady's report notes that a functional capacity evaluation was performed three days before he examined Petitioner, "but I do not have records on that." The functional capacity evaluation, conducted by a physical therapist, rated Petitioner's physical abilities in twenty-four different categories to determine whether he could return to work. After this comprehensive evaluation, the physical therapist made specific findings explaining his determination that Petitioner could not return to full duty work, stating that Petitioner "continues to be limited with lifting overhead and pivoting/twisting/lifting combination activities that limit his ability to safely return to work at this time." Thus, the physical therapist recommended that Petitioner complete four more weeks of physical therapy before returning to work. These detailed findings were critical to the central issue in this appeal, whether Petitioner had reached MMI for his low back injury and could safely return to full duty work. In sum, Dr. Grady's report was (1) completed without the data and conclusions contained in the functional capacity evaluation, and (2) based on the mistaken premise that Petitioner's compensable condition was "lumbar sprain." Therefore, we find Dr. Grady's report to be of limited value.

By contrast to Dr. Grady's opinion that Petitioner had reached MMI for "lumbar sprain" as of November 1, 2021, Petitioner's treating physician, Dr. Biundo, concluded that Petitioner had not reached MMI by November of 2021. Instead, Dr. Biundo, who had treated Petitioner from January of 2021 through December of 2021 when he submitted his MRI request, concluded that the additional MRI was necessary to assess Petitioner's low

default rule that states when a factfinder is presented with evidence of equal evidentiary weight, she must adopt "the resolution that is most consistent with the claimant's position[.]" When confronted with conflicting medical opinions, the factfinder must consider the entire record, clarify inconsistencies, and adequately explain her reasons for choosing one medical opinion over the other. A factfinder cannot resolve the discrepancy between medical opinions with a mere announcement that one expert is reliable; she must provide some articulation for why that expert's opinion was selected, including an explanation of why that opinion was selected over another.

2024 WL 4767011, at *4 (internal footnote omitted).

back injury before clearing him to return to full duty work. Additionally, Gary P. Barcinas, the physician's assistant who examined Petitioner on November 10, 2021, assessed Petitioner with both a lumbar sprain and a lumbar herniated disc. Similarly, Petitioner's physical therapist who conducted the functional capacity evaluation on October 29, 2021, determined that Petitioner could not return to full duty work at that time.

As previously indicated, we find that Dr. Grady's opinion has limited value for the reasons outlined above. The remaining medical evidence in the record demonstrates that Petitioner had not reached MMI for his low back injury as of November 1, 2021. Therefore, we find that the ICA erred by affirming the BOR's order closing Petitioner's claim for TTD benefits and denying authorization for the requested MRI on the basis that his compensable injuries had reached MMI.[10]

Next, we address the ICA's conclusion that the requested MRI was properly denied because lumbar herniated disc is not a compensable condition in this claim. While the ICA did not discuss this issue at length, the inference from its ruling is that Petitioner's herniated disc was either unrelated to his compensable injury or, to the extent it was caused by the compensable injury, Dr. Biundo should have submitted a diagnosis update requesting that "herniated disc" be added as a compensable condition. After review, we do not find support for either of these positions. First, we note that when Petitioner was initially examined by Dr. Biundo on January 26, 2021, Dr. Biundo found that Petitioner exhibited "evidence of lumbar radiculopathy, lumbar strain, and *possible lumbar herniated disc*." (Emphasis added). Dr. Biundo's diagnosis in January of 2021 included both lumbar radiculopathy and lumbar herniated disc. Based on this diagnosis, the claim administrator held the claim compensable under the broad, general condition, "low back." Because Dr. Biundo had identified "possible herniated disc" before the claim was held compensable for "low back," Dr. Biundo had no reason to believe that he needed to submit a diagnosis update to add "herniated disc" as a compensable condition in this claim. Stated differently, we agree with Judge Scarr's dissent in *Weese* in which he noted that "the compensable condition in the claim is 'low back,' which is so broad it cannot be said to exclude annular tear/herniated disc." *Weese*, 2023 WL 2863245, at *5 (Scarr, J., dissenting). Finally, we find that the preponderance of the medical evidence, as well as Petitioner's deposition

---

[10] TTD benefits are not available once a claimant either reaches MMI, is released to return to work, or returns to work. *See* W. Va. Code § 23-4-7a. Here, Petitioner's claim was closed for TTD benefits because Dr. Grady found him to have reached MMI. However, we have found that the preponderance of the medical evidence established that Petitioner's low back injury had not reached MMI as of November 1, 2021. Moreover, there is no evidence in the record that Petitioner's treating physician had released him to return to work or that he had otherwise returned to work. In the absence of any evidence that the statutory requirements for closing TTD existed, Petitioner was entitled to reinstated TTD benefits.

testimony,[11] does not support a finding that Petitioner's herniated disc was unrelated to his compensable injury. It is undisputed that Petitioner never sought treatment or had any issues with his back prior to the compensable workplace injury. Both Dr. Biundo and Dr. Martin found that the possible herniated disc could have been attributable to the workplace injury. Dr. Grady's report is the only medical evidence in the record that would lead to the opposite conclusion. For the reasons previously discussed, we find Dr. Grady's report to be of limited value in this case. Therefore, to the extent the ICA concluded that the requested MRI was properly rejected because herniated disc was not a compensable condition in this claim, we reject this finding.

Based on all of the foregoing, we conclude that the preponderance of the medical evidence demonstrates that Petitioner's compensable "low back" injury had not reached MMI when the claim administrator entered the two orders closing his claim for TTD benefits and denying the requested MRI for the lumbar spine. Therefore, we reverse the ICA's decision and remand this matter to the BOR with directions for entry of an order consistent with our rulings herein.

Reversed and Remanded with Directions.

ISSUED: April 15, 2025

CONCURRED IN BY:
Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

---

[11] During Petitioner's deposition, he was asked if he had any back problems prior to the date of his compensable injury. He replied that he had not and stated that he had never been to physical therapy or been to "a chiropractor, or anything like that" prior to January 4, 2021.